IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| CHRYSANTHEMUM SHAVER | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 09-2353M |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |


MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Chrysanthemum Shaver ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB")[1] under Title II and of the Social Security Act, 42 U.S.C.§§ 401-433.  Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 25).  No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed her application for DIB on September 26, 2006 alleging disability since March 8, 2005 (subsequently amended to October 6, 2006, R. at 16, 30) on the

---

[1] Plaintiff did not file for Supplemental Security Income despite the reference in her brief.  Paper No. 14 at 1; *see* R. at 30.

basis of incomplete spinal cord injury and partial paralysis of both legs.  R. at 16, 64, 115.  Her claim was denied initially and on reconsideration.  R. at 16, 54-55.  On January 26, 2009, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff testified.  R. at 27-53.  A Vocational Expert ("VE") also testified.  Plaintiff was represented by counsel.  In a decision dated March 24, 2009, the ALJ denied Plaintiff's request for benefits.  R. at 16-26.  On July 29, 2009, the Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review.  R. at 1-5.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. §  404.1520.  At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her amended alleged onset date.  At step two, the ALJ determined that Claimant suffered from the following medically determinable impairments: incomplete thoracic spinal cord injury status post fusion from T4 to T7, left temporal lobe injury, and an adjustment disorder.  At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ concluded at step four that Plaintiff was not capable of performing her past relevant work.  At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy.  Accordingly, she concluded that Claimant was not disabled.  R. at 16-26.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the

Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

## IV. Discussion

Plaintiff raises two issues, both with respect to the ALJ's findings regarding her mental limitations.  First, she argues that the ALJ did not properly evaluate her Mental Residual Functional Capacity (MRFC).  Second, she argues that the ALJ improperly relied on the Consultative Examination ("CE") of Dr. William Miller because it was not supported by objective testing.

A. Mental RFC

Plaintiff directs the Court's attention to two MRFC Assessments ("Assessment(s)"). The first was completed by Dr. Caroline B. Moore on February 5, 2007 and the other by Dr. G.

3

Dale, Jr. on December 11, 2007.  R. at 376-78, 530-32.  In the first assessment, Claimant was noted to be moderately limited in several areas including: ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to work in coordination and proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get alone with coworkers and peers without distracting them or exhibiting behavioral extremes and ability to respond appropriately to changes in the work setting.  R. at 376-78.  The December, 2007 Assessment was largely similar and while it did find that Claimant was *not significantly limited* in the ability to accept instructions and respond appropriately to criticism from supervisors, it found that she was also moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public.  R. at 530-31.

Plaintiff argues that although the ALJ purported to give these opinions "significant weight", R. at 24, the findings are somehow inconsistent with this RFC finding.   The ALJ found that Claimant has the RFC to perform sedentary work except that she required a sit/stand option at least once an hour, she was limited to jobs with short, simple instructions and simple, routine tasks, and she was limited to jobs where interaction with the public is either occasional or one on one. R. at 21-22.  The Court does not find an inconsistency.  For example, Dr. Moore

4

added that the ratings indicate "mild to no difficulties with attention and concentration for simple, brief tasks and routines" and that claimant "does not demonstrate severe difficulties with cognitive functioning." R. at 378. She further stated that Claimant is able to relate to others and engage in appropriate social interactions although she has some difficulty with mood and anxiety management. *Id.* She also indicated that Claimant may exhibit difficulties on occasion with more complex tasks and persistence given degree of symptoms, stressors and medication effects at the time. *Id.* She noted the moderate social restrictions and impairments in adaptation listed above but nevertheless, she significantly opined that Claimant "retains functional capacity to perform simple work-related tasks on an ongoing basis from a mental standpoint." *Id.* While Dr. Dale did not specifically state such an opinion, his Mental RFCA is substantially similar to that of Dr. Moore although he opined that Claimant had additional moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. R. at 530-31. However, the ALJ's RFC accounts for these more restrictive findings because, as mentioned above, the ALJ limited her to jobs with short, simple instructions and simple, routine tasks, and she was limited to jobs where interaction with the public is either occasional or one on one. R. at 21-22. Accordingly, the Court finds the ALJ did not err when he afforded significant weight to the opinions of the state agency psychological consultants.[2]

    B.    <u>CE of Dr. Miller</u>

---

[2] The Court has also reviewed Plaintiff's related argument that the ALJ's hypothetical to the VE was improper. The Court finds no error in this regard.

In November, 2007, Dr. Miller performed a consultative psychological evaluation at which time he diagnosed Plaintiff with depressive disorder, post traumatic stress disorder, dyssomnia and a cognitive disorder. R. at 509. He also assessed Claimant with a global assessment of function ("GAF") of 55 which indicates " *moderate* " difficulty in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed.2000). R. at 20, 510. He noted that Claimant was a victim of sexual abuse as a child and adult and that there was no evidence of a psychotic disorder. R. at 508-10. Based on these findings and her history of concussion and left temporal lobe injury, Claimant argues that intelligence testing was mandated under the regulations. That argument is without merit. The regulations provide that the evaluation of disability on the basis of a mental disorder requires sufficient evidence to (1) establish the presence of a medically determinable mental impairment(s), (2) assess the degree of functional limitation the impairment(s) imposes, and (3) project the probable duration of the impairment(s). *See* 20 C.F.R. pt. 404, Subpart P, Appendix 1, § 12.00D. The regulations go on to state that all relevant evidence in the record will be considered including intelligence tests. *Id.* The specific provision upon which Plaintiff relies only states that the results of those tests "may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Id*. at § 12.00D6a Nothing indicates that such testing is

mandatory as Plaintiff seems to argue.

The Court assumes that Plaintiff intended to cite § 12.00D6b which provides that "[s]tandardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A." However, this provision also does not advance Plaintiff's case. The ALJ specifically found that Claimant did not demonstrate significant deficits in adaptive functioning warranting a diagnosis of mental retardation, or evaluation of her deficits under section 12.05." R. at 20. The ALJ noted that Clamant takes care of her own needs and those of her children and that she completed three years of college education. *Id*. In addition, Dr. Miller himself estimated Claimant was of "average intelligence." R. at 509.

Finally, the Court agrees with the Commissioner that Claimant cannot suffer from mental retardation as defined in the regulations because the evidence does not support onset before the age of 22. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05 ("Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22."). Claimant completed high school and three (or possibly four) years of college. R. at 34, 508  Her first automobile accident which formed the basis of her alleged disability did not occur until December, 2003 at which time Claimant was 25 years old. R. at 30, 32 (testimony of date of birth of August 25, 1978).

V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A

separate order shall issue.


Date: September 29, 2011 _____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge


Copies to:
W. James Nicoll
Jenkins Block & Associates, P.C.
The Symphony Center
1040 Park Avenue
Suite 206
Baltimore, MD 21201


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692